FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AUG **2 0** 2020

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES OF AMERICA,　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　**4:20CR00405 AGF/SPM**
　　　　　　　　　　　　　　　　　　　　)
MICHAEL FEIN,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　　　)

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
## WIRE FRAUD

A.　INTRODUCTION

At all times relevant to the Indictment:

1.　KM-T.E.H. Management, LLC (hereinafter referred to as "T.E.H. Management")
was a Missouri Limited Liability Corporation with its office located in Kansas City, Missouri.
T.E.H. Management managed multi-family apartment complexes owned by various T.E.H.
affiliated entities throughout the Midwestern United States, including in the St. Louis, Missouri,
Kansas City, Missouri, and Tulsa, Oklahoma areas.

2.　SM-T.E.H. Realty 7, LLC (hereinafter referred to as "T.E.H. 7") was a Missouri
Limited Liability Corporation, and a T.E.H. affiliated entity.  During 2018, T.E.H. 7 purchased
the Pinnacle Ridge Apartments multi-family apartment complex located in the St. Louis,
Missouri area.

3.    KM-T.E.H. 5, LLC (hereinafter referred to as "T.E.H. 5") was a Missouri Limited Liability Corporation, and a T.E.H. affiliated entity.  T.E.H. 5 owned the Green Village Townhomes multi-family apartment complex located in the Kansas City, Missouri area.

4.    KTT02-Pickwick, LLC (hereinafter referred to as "Pickwick") was an Oklahoma Limited Liability Corporation, and a T.E.H. affiliated entity.  Pickwick owned the Ivy Place Apartments multi-family apartment complex located in the Tulsa, Oklahoma area.

5.    SM-T.E.H. Realty 14, LLC (hereinafter referred to as "T.E.H. 14") was a Missouri Limited Liability Corporation, and a T.E.H. affiliated entity.  T.E.H. 14 attempted to purchase the Hanley Crossings multi-family apartment complex located in the St. Louis, Missouri area.

6.    Defendant **MICHAEL FEIN** (hereinafter referred to as "**FEIN**"), was an owner and vice president of T.E.H. Management, and an owner and manager of T.E.H. 7, T.E.H. 5, Pickwick, and T.E.H. 14.  **FEIN** was an owner and manager of various other T.E.H. affiliated entities which owned and managed multi-family apartment complexes throughout the United States.  **FEIN** operated out of a number of T.E.H. offices, including in New York City, New York, Reading, Pennsylvania, and Kansas City, Missouri.  **FEIN** was responsible for the day to day operations of T.E.H. Management and the various T.E.H. affiliated entities which owned multi-family apartment complexes throughout the United States, including T.E.H. 7 and T.E.H. 14 in St. Louis, Missouri, T.E.H. 5 in Kansas City, Missouri, and Pickwick in Tulsa, Oklahoma.

7.    Pinnacle Ridge Apartments (hereinafter referred to as "Pinnacle Ridge") was a 168 unit multi-family apartment complex located on Lookaway Drive in St. Louis County, Missouri.  Pinnacle Ridge was owned by PR Pinnacle, LLC, a subsidiary of Property Resource Associates, LLC of Wellington, Florida.  During 2018, PR Pinnacle, LLC sold Pinnacle Ridge to

T.E.H. 7 for approximately $4,340,000. **FEIN** acted on behalf of T.E.H. 7 relative to its purchase of Pinnacle Ridge, and in obtaining funding to complete the purchase of Pinnacle Ridge.

8.      Green Village Townhomes (hereinafter referred to as "Green Village") was a 304 unit multi-family apartment complex located on East 20th Street in Kansas City, Missouri. Green Village was owned by T.E.H. 5. During 2017, T.E.H. 5 refinanced its outstanding loan on Green Village, obtaining a new $12,500,000 loan. **FEIN** acted on behalf of T.E.H. 5 relative to its refinance of the outstanding loan on Green Village, and in obtaining funding to complete the refinancing of the outstanding loan on Green Village.

9.      Ivy Place Apartments (hereinafter referred to as "Ivy Place") was a 260 unit multi-family apartment complex located on Garnett Road in Tulsa, Oklahoma. Ivy Place was owned by Pickwick. During 2017, Pickwick refinanced its outstanding loan on Ivy Place, obtaining a new $7,700,000 loan. **FEIN** acted on behalf of Pickwick relative to its refinance of the outstanding loan on Ivy Place, and in obtaining funding to complete the refinancing of the outstanding loan on Ivy Place.

10.      Hanley Crossings was a 208 unit multi-family apartment complex located on Dragonwyk Drive in St. Louis, Missouri. Hanley Crossings was owned by Hanley Crossings, L.P., a Missouri Limited Partnership. During 2019, T.E.H. 14 applied for a $5,225,000 loan in order to purchase Hanley Crossings. **FEIN** acted on behalf of T.E.H. 14 relative to its attempt to purchase Hanley Crossings, and in attempting to obtain funding to complete the purchase of Hanley Crossings.

11.      Greystone Servicing Corporation, Inc. (hereinafter referred to as "Greystone") was a financial institution with its headquarters located in Warrenton, Virginia. Greystone was

3

in the business of, among other things, providing loan funding to companies involved in the purchase and refinancing of multi-family apartment complexes. During 2018, **FEIN**, acting on behalf of T.E.H. 7, obtained a $2,800,000 loan from Greystone relative to the purchase of Pinnacle Ridge. During 2017, **FEIN**, acting on behalf of T.E.H. 5, obtained a $12,500,000 loan from Greystone relative to the refinance of Green Village.

12.     Eastern Union was a private commercial real estate mortgage brokerage company with offices located in Brooklyn, New York and Howell, New Jersey, along with several other locations on the east coast of the United States. Eastern Union worked with **FEIN** in brokering the loan transactions related to Pinnacle Ridge, Green Village, and Ivy Place.

13.     Jones, Lang, LaSalle Multifamily, LLC (hereinafter referred to as "JLL") was a financial institution with its headquarters located in Chicago, Illinois. JLL was in the business of, among other things, providing loan funding to companies involved in the purchase and refinancing of multi-family apartment complexes. During 2017, **FEIN**, acting on behalf of Pickwick, obtained a $7,700,000 loan from JLL relative to the refinance of Ivy Place.

14.     Gershman Investment Corporation (hereinafter referred to as "Gershman") was a financial institution with its headquarters located in St. Louis, Missouri. Gershman was in the business of, among other things, providing loan funding to companies involved in the purchase and refinancing of multi-family apartment complexes. During 2019, **FEIN**, acting on behalf of T.E.H. 14, attempted to obtain a $5,225,000 loan from Gershman relative to an attempt to obtain funding for the purchase of Hanley Crossings.

15.     The Federal Home Loan Mortgage Corporation, known as "Freddie Mac," and the Federal National Mortgage Association, known as "Fannie Mae," were government sponsored enterprises formed by the United States Congress to increase the amount of money available in

' the mortgage lending market. Freddie Mac and Fannie Mae worked with certain approved financial institutions that issue loans, which loans the financial institutions then sell to Freddie Mac and Fannie Mae, while continuing to service the loans on behalf of Freddie Mac and Fannie Mae. Freddie Mac purchased the refinance loan on Ivy Place from the lender, Jones, Lang, LaSalle. Fannie Mae purchased the refinance loan on Green Village from the lender, Greystone.

16.     The United States Department of Housing and Urban Development, Federal Housing Administration (hereinafter referred to as "FHA") was a government agency that insured mortgages made by private lenders. FHA mortgage insurance protected lenders against losses by paying a claim to the lender for the unpaid principal balance in the event that a property owner defaulted on their mortgage. Because lenders took on less risk, the amount of money available in the mortgage lending market was increased. **FEIN**, acting on behalf of T.E.H. 14, attempted to obtain a $5,225,000 FHA insured loan from Gershman relative to an attempt to obtain funding for the purchase of Hanley Crossings.

17.     A rent roll is a spreadsheet listing all of the tenants in a multi-family apartment complex during a specific time frame, by occupied unit number.

B.     SCHEME TO DEFRAUD

18.     Beginning in or about July, 2016 and continuing through in or about February, 2019, both dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, the defendant,

**MICHAEL FEIN**,

devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from financial institutions, including Greystone, JLL, and Gershman, and government sponsored

5

enterprises, including Freddie Mac and Fannie Mae, in an approximate amount of $28,225,000, by means of materially false and fraudulent pretenses, representations, and promises.

PINNACLE RIDGE

19.      On or about July 18, 2016, **FEIN**, on behalf of T.E.H. 7, entered into a sales contract with PR Pinnacle, LLC for the purchase of Pinnacle Ridge.  On June 5, 2017, **FEIN**, on behalf of T.E.H. 7, entered into an amended sales contract with PR Pinnacle, LLC for the purchase of Pinnacle Ridge with a sales price of $4,200,000.

20.      As a part of the scheme, **FEIN** sent to Eastern Union and Greystone a falsely inflated rent roll for Pinnacle Ridge dated July 12, 2017.  The rent roll falsely identified and included approximately sixty-nine purported Pinnacle Ridge tenants who, in fact, did not reside at Pinnacle Ridge.  The rent roll, therefore, falsely inflated the occupancy rate of Pinnacle Ridge to 94.05%.  **FEIN** had previously been provided a true and correct rent roll for Pinnacle Ridge, dated June 5, 2017, by representatives of Property Resource Associates, LLC, which accurately included an occupancy rate for Pinnacle ridge of 53%.   The false July 12, 2017 rent roll was included in T.E.H. 7's loan application to Greystone, and Greystone relied upon it in determining to fund T.E.H. 7's purchase of Pinnacle Ridge.

21.      As a further part of the scheme, on or about August 4, 2017, **FEIN** sent to Eastern Union a falsely inflated summary of real estate owned by T.E.H. affiliated entities, dated June 26, 2017.  This summary falsely inflated the occupancy rates of some of the listed multi-family apartment complexes by approximately 13 1/2% each, a fact known by **FEIN**.  The false June 26, 2017 summary of real estate owned, updated on March 21, 2018, was sent by **FEIN** to Eastern Union and falsely inflated the occupancy rates of 19 of the listed multi-family apartment complexes by an average of approximately 16% each, a fact known by **FEIN**.  The false updated

6

March 21, 2018 summary of real estate owned was included in T.E.H. 7's loan application to Greystone, and Greystone relied upon it in determining to fund T.E.H. 7's purchase of Pinnacle Ridge.

22.     On or about March 20, 2018, representatives of Property Resource Associates, LLC sent to **FEIN** a true and accurate rent roll for Pinnacle Ridge which included an actual occupancy rate of 58%. As a further part of the scheme, on or about March 22, 2018, **FEIN** submitted to Greystone and Eastern Union a false loan application for funding to purchase Pinnacle Ridge, requesting a loan in the amount of $3,512,000. This loan application included a falsely inflated occupancy rate for Pinnacle Ridge of 94.05%, and a falsely inflated monthly net rental income figure for Pinnacle Ridge of $87,397. The actual monthly net rental income for Pinnacle Ridge for the prior twelve months was approximately between $38,000 and $51,000, as **FEIN** well knew. Greystone relied upon the false March 22, 2018 loan application in determining to fund T.E.H. 7's purchase of Pinnacle Ridge.

23.     As a further part of the scheme, on or about April 11, 2018 and April 18, 2018, **FEIN** certified an April 8, 2018 rent roll and a fourteen-month trailing income statement which covered the fourteen months up to and including February, 2018. Both of these documents were purportedly for Pinnacle Ridge, and both of these documents were false. The April 8, 2018 rent roll was falsely inflated, and included many purported tenants who did not actually rent units at Pinnacle Ridge as of April 8, 2018. The fourteen-month trailing income statement falsely inflated the total operating income for Pinnacle Ridge for each of the preceding fourteen months. For example, the false fourteen-month trailing income statement listed January, 2017 total operating income as $78,413, when it was actually $41,732.75, and listed December, 2017 total operating income as $90,784, when it was actually $46,151. Greystone relied upon the false

7

April 8, 2018 rent roll and the false fourteen month trailing income statement in determining to fund T.E.H. 7's purchase of Pinnacle Ridge.

24.     As a further part of the scheme, on or about May 4, 2018, **FEIN** sent to Greystone and Eastern Union a three year pro forma projected budget for Pinnacle Ridge. This pro forma was false, in that it falsely inflated the occupancy rate of Pinnacle Ridge, and it falsely inflated the income figures for Pinnacle Ridge. Greystone relied upon the false pro forma in determining to fund T.E.H. 7's purchase of Pinnacle Ridge.

25.     As a further part of the scheme, and based upon **FEIN's** false representations, on or about May 16, 2018, the sale of Pinnacle Ridge from PR Pinnacle, LLC to T.E.H. 7 closed at the offices of St. Louis Title Company, in St. Louis, Missouri.

GREEN VILLAGE

26.     As a further part of the scheme, on or about December 1, 2016, **FEIN** submitted a false Fannie Mae loan application to Greystone for the refinancing of the outstanding loan on Green Village.

27.     As a further part of the scheme, on or about February 6, 2017, in support of the refinancing loan application, **FEIN** certified a false rent roll dated January, 2017 purportedly for Green Village which falsely inflated the occupancy rate at Green Village to 88.49% when, in fact, as **FEIN** well knew, the occupancy rate of Green Village during January, 2017 was approximately 50.2%. Greystone and Fannie Mae relied upon this false January, 2017 rent roll in determining to fund the refinancing of the outstanding loan on Green Village.

28.     As a further part of the scheme, on or about February 6, 2017, in support of the refinancing loan application, **FEIN** certified a false operating statement for the year 2016 purportedly for Green Village. The operating statement falsely inflated the rental income for

Green Village for the year 2016. Greystone and Fannie Mae relied upon this false operating statement in determining to fund the refinancing of the outstanding loan on Green Village.

29.     As a further part of the scheme, and based upon **FEIN's** false representations, on or about February 13, 2017, the refinancing of the Green Village loan closed, with Greystone and Fannie Mae funding the $12,500,000 loan to T.E.H. 5. As part of the refinancing transaction, and in addition to paying off the outstanding loan balance, T.E.H. 5 received $6,080,763.27 at the time of the closing.

IVY PLACE

30.     As a further part of the scheme, on or about October 27, 2017, **FEIN** submitted a false Freddie Mac loan application to JLL for the refinancing of the outstanding loan on Ivy Place.

31.     As a further part of the scheme, in support of the refinancing loan application, **FEIN** certified a false rent roll dated October 18, 2017 purportedly for Ivy Place which falsely inflated the occupancy rate at Ivy Place to 96.54% when, in fact, as **FEIN** well knew, the occupancy rate of Ivy Place during October, 2017 was approximately 66.5%. JLL and Freddie Mac relied upon this false October 18, 2017 rent roll in determining to fund the refinancing of the outstanding loan on Ivy Place.

32.     As a further part of the scheme, in support of the refinancing loan application, **FEIN** certified a false twelve month trailing income statement purportedly for Ivy Place which covered the twelve months up to and including October, 2017. The twelve month trailing income statement falsely inflated the total property income for Ivy Place for each of the preceding twelve months. JLL and Freddie Mac relied upon this false twelve month trailing income statement in determining to fund the refinancing of the outstanding loan on Ivy Place.

9

33.     As a further part of the scheme, and based upon **FEIN's** false representations, on or about December 28, 2017, the refinancing of the Ivy Place loan closed, with JLL and Freddie Mac funding the $7,700,000 loan to Pickwick.  As part of the refinancing transaction, and in addition to paying off the outstanding loan balance, Pickwick received $977,754.52 at the time of the closing.

HANLEY CROSSINGS

34.     As a further part of the scheme, on or about February 20, 2019, **FEIN** submitted a false FHA insured loan application to Gershman in an attempt to obtain a $5,225,000 loan to purchase Hanley Crossings.

35.     As a further part of the scheme, in support of the loan application, **FEIN** certified a falsely inflated summary of real estate purportedly owned by T.E.H. affiliated entities, dated January 24, 2019.  This summary of real estate falsely inflated the occupancy rates of twenty-six of the listed multi-family apartment complexes by approximately 18% each, a fact known by **FEIN**.  The false January 24, 2019 summary of real estate owned was included in the T.E.H. 14 loan application to Gershman, and FHA, and it was relied upon in determining to fund the loan to T.E.H. 14 for the purpose of purchasing Hanley Crossings.  Ultimately, this FHA insured Gershman loan to T.E.H. 14 was not funded.

C.     THE WIRE

36.     On or about May 15, 2018, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including a wire transfer of $2,800,000 from

10

Greystone's bank account at Valley National Bank in Wayne, New Jersey to St. Louis Title

Company's escrow bank account at Commerce Bank in St. Louis, Missouri, which funds were

the proceeds of Greystone's loan to T.E.H. 7 for the purchase of Pinnacle Ridge.

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO
## BANK FRAUD

37.     The allegations contained in the Introduction and Count 1, paragraphs 1 through

35 of this Indictment, are re-alleged and incorporated by reference as if fully set forth herein.

38.     Beginning in or about July, 2016 and continuing through in or about February,

2019, both dates being approximate and inclusive, in the Eastern District of Missouri and

elsewhere, the defendant,

### MICHAEL FEIN,

executed and attempted to execute the scheme and artifice as set forth above, and to obtain and

attempt to obtain moneys and funds owned by and under the custody and control of financial

institutions and government sponsored enterprises, as follows:

a.     **FEIN** made false statements and false representations to Greystone Servicing

Corporation, Inc., a financial institution, in order to secure, and attempt to secure, a loan in the

amount of $2,800,000 on behalf of T.E.H. 7 for the purchase of Pinnacle Ridge.

b.     **FEIN** made false statements and false representations to Greystone Servicing

Corporation, Inc., a financial institution, and the Federal National Mortgage Association, a

government sponsored enterprise, in order to secure, and attempt to secure, a loan in the amount

of $12,500,000 on behalf of T.E.H. 5 for the purpose of refinancing the outstanding loan balance

on Green Village.

c.    **FEIN** made false statements and false representations to Jones, Lang, LaSalle

Multifamily, LLC, a financial institution, and the Federal Home Loan Mortgage Corporation, a

government sponsored enterprise, in order to secure, and attempt to secure, a loan in the amount

of $7,700,000 on behalf of Pickwick for the purpose of refinancing the outstanding loan balance

on Ivy Place.

d.    **FEIN** made false statements and false representations to Gershman Investment

Corporation, a financial institution, and the United States Department of Housing and Urban

Development, Federal Housing Administration, in order to secure, and attempt to secure, a loan

in the amount of $5,225,000 on behalf of T.E.H. 14 for the purchase of Hanley Crossings.

All in violation of Title 18, United States Code, Section 1344(1) and (2).

## FORFEITURE ALLEGATION

The United States Attorney further alleges there is probable cause that:

1.    Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28,

United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United

States Code, Sections 1341 or 1344 as set forth in Counts 1 through 2, the defendant shall forfeit

to the United States of America any property, real or personal, which constitutes or is derived

from proceeds traceable to such violation.

2.    Subject to forfeiture is a sum of money equal to the total value of any property,

real or personal, constituting or derived from any proceeds traceable to such violations, which is

at least $23,000,000.

3.    If any of the property described above, as a result of any act or omission of the

defendant:

        a.    cannot be located upon the exercise of due diligence;
        b.    has been transferred or sold to, or deposited with, a third party;

12

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

A TRUE BILL.


_____

FOREPERSON


JEFFREY B. JENSEN
United States Attorney


_____

HAL GOLDSMITH, #32984(MO)
Assistant United States Attorney

13